MANISH KUMAR (CSBN 269493)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT KRAMER,<br><br>Defendant. | Case No. CR 4:11-00423 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: August 9, 2017<br>Time: 2:30 p.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Robert Kramer to (1) serve ten months of custody, based on the government's motion for a downward departure of thirty-five percent from the low end of the Guidelines range for substantial assistance, (2) serve three years of supervised release, and (3) pay a criminal fine of $10,000, a $100 special assessment, and restitution in the amount of $319,856. This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

**BACKGROUND**

Defendant Robert Kramer was a real estate investor who participated in the bid-rigging conspiracies at the Alameda County and Contra Costa County foreclosure auctions. In total, his

bid-rigging conduct lasted for approximately two and a half years. PSR ¶ 6. Defendant has operated the real estate firm Robert Kramer and Associate since the late 1980s. *Id.* at ¶ 7. For a fee, defendant purchased foreclosed residential properties on behalf of clients at the auctions for investment and resale. While defendant ran an office with several employees, he generally attended the auctions and purchased properties in person. Defendants charged his clients either a flat fee or a fee based on the projected net profit from a resale of the property. Defendant also occasionally acted as a hard money lender for investors purchasing properties at the foreclosure auctions. *Id.* at ¶ 8.

Defendant was a frequent participant in the bid-rigging conspiracies. He is implicated in a total of 271 rigged auctions. Defendant collected $318,856 in payoffs from the bid-rigging agreements and rounds. He purchased approximately 59 properties pursuant to the conspiracy, resulting in an impacted volume of commerce of approximately $12.9 million. *Id.* at ¶ 9.

Defendant entered his original guilty pleas to two counts of conspiracy to commit mail fraud (18 U.S.C. § 1349) and two counts of bid rigging (15 U.S.C. § 1) in June 2011. *Id.* at ¶ 1. In January 2017, those pleas were withdrawn by stipulation, and the defendant entered a guilty plea, pursuant to a revised plea agreement, to the bid-rigging counts only. Minute Entry, Doc. No. 96. The Court adopted the Report and Recommendation accepting defendant's guilty plea, but "reserve[d] ruling on whether it will accept the plea agreement, if any, pending receipt of the presentence report." Order, Doc. No. 100.[1]

## ARGUMENT

### A. Sentencing Guidelines Calculations

#### 1. Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court. The Presentence Report (PSR) calculates defendant's Criminal History Category as I based on the lack of any criminal history, and the United States agrees. PSR ¶ 29.

---

[1] Because the plea agreement is consistent with the Guidelines calculation contained in the PSR, the government will make a motion for the Court to accept the plea agreement and to dismiss the mail fraud counts (Counts Two and Four of the Information) at the sentencing hearing.

### 2. Offense Level

The PSR calculates the total offense level as 14, consistent with the plea agreement. *Id.* at ¶ 43. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a four-level increase for a volume of commerce exceeding $10 million, and a downward reduction of three points for acceptance of responsibility. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1) and (2), 3E1.1(a) and (b) (U.S. Sentencing Comm'n 2010).

Under the Sentencing Guidelines, an offense level of 14 and Criminal History Category of I results in a sentence ranging from 15 to 21 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $128,570 to $642,850, consistent with the plea agreement. PSR ¶ 57; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In Paragraph Nine of the plea agreement, the government agrees to recommend a fine between $10,000 and $100,000. In light of the substantial restitution that defendant has agreed to pay, the government recommends a $10,000 fine, at the low end of that range.

As for restitution, while the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release). The parties have agreed to recommend that the Court order the defendant to pay restitution. The government recommends that Court order the defendant to pay restitution in the amount of $319,856. PSR ¶ 59. It should be noted that this amount is slightly lower than what is specified in the plea agreement ($327,492), but represents the correct amount of restitution actually owed after accounting for an arithmetic error and two auctions that were later determined to be rescinded.

## B. Basis for Downward Departure for Substantial Assistance

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea agreement in this case. The government recommends a thirty-five percent reduction from the

low end of the Guidelines range of twelve months, resulting in a sentence of approximately ten months.

This reduction is based in large part on the timing of defendant's plea. After the investigation went public in 2011, defendant was one of the first individuals to agree to plead guilty and cooperate in the government's investigation, and thus likely influenced many other of his coconspirators to plead guilty as well. The government's recommendation is also based on the extent and value of the information provided by defendant. Defendant sat for five debrief interviews with the government, which generally consisted of the defendant describing the records that he maintained of the rounds and payoffs that he participated in (these records had been previously seized pursuant to a search warrant). These interviews were useful to the government for their corroborative value, especially because they occurred early in the investigation. However, defendant did not testify in any of the subsequent trials. Based on the foregoing, a thirty-five percent reduction for substantial assistance is appropriate.

**C. Sentencing Recommendation**

The government's recommendation of ten months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. As the Court is well aware, the government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally. What distinguishes this case from others in the investigation is the magnitude of defendant's participation in the bid-rigging conspiracy. The 271 rigged auctions that defendant was personally implicated in—without any employees or proxies acting on his behalf—makes him one of the more culpable participants in the conspiracy in quantitative terms, impacting well more than $10 million of commerce. In addition to the payoffs that he pocketed from the rounds, defendant also reaped a financial windfall from purchasing properties at the public auctions at a lower price. Given the magnitude of the financial harm caused by defendant's conduct, the government's recommendation, which includes a custodial term, is appropriate.

/ /

The government recognizes, however, that in balancing the sentencing factors under 18 U.S.C. § 3553, the Court places weight on a decision by a first-time offender to cooperate in the government's investigation. Here, notwithstanding his culpability, defendant's cooperation was important to the government's investigation, even though he was not called to testify. Because defendant was one of the first individuals to take responsibility for his conduct and assist the government, he likely influenced the many coconspirators who decided to plead guilty after him. Therefore, in the interests of justice, and under § 3553(a)(6), the government recommends that this factor should be appropriately taken into account in the punishment imposed by the Court.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Robert Kramer to (1) serve ten months of custody, based on the government's motion for a downward departure of thirty-five percent from the low end of the Guidelines range for substantial assistance, (2) serve three years of supervised release, and (3) pay a criminal fine of $10,000, a $100 special assessment, and restitution in the amount of $319,856.

Dated: August 2, 2017

Respectfully submitted,

/s/
MANISH KUMAR
United States Department of Justice
Antitrust Division