HUGH ANTHONY LEVINE (CABN 69857)
2000 Broadway, Suite 143
Redwood City, CA 94063
Telephone: (415) 732-6101
Facsimile: (510) 350-9123
Email: Levine@LevineDefense.com

Attorney for Defendant, ROBERT KRAMER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>ROBERT KRAMER,<br>Defendant. | CR11-00423 PJH<br>DEFENDANT KRAMER'S MEMORANDUM ON SENTENCING.<br>Hearing Date: August 9, 2017<br>Hearing Time: 2:30 p.m. |

Defendant Robert Kramer submits the within memorandum on sentencing.

Respectfully submitted,

<u>/s/ *Hugh Anthony Levine*</u>

HUGH ANTHONY LEVINE

Attorney for Defendant

**MEMORANDUM ON SENTENCING**

**Summary**

1. This sentencing is pursuant to the written Plea Agreement of the parties (Document 99) *per* FRCrP Rule 11(c)(1)(B).

2. Defendant does not request an evidentiary hearing on any subject.

3. As stated in paragraph 9 of the Plea Agreement, the parties agree that the defendant's total offense level is 14, and the Probation Officer concurs in this calculation (PSR, ¶ 24). The Probation Officer's conclusion that the defendant has no scoreable criminal history points (PSR, ¶s 28-29) is not disputed by the parties. Accordingly, prior to consideration of any downward departure pursuant to USSG §5K1.1 and any variance pursuant to 18 U.S.C. §3553(a), the applicable Guidelines sentencing range is 15-21 months, which range comes within Zone D.

4. The government's sentencing memorandum does include a motion pursuant to USSG §5K1.1 with a recommended downward departure of 35%, which, if calculated on the low end of the applicable Guidelines range of 15 months, equates to 5.25 months, resulting in a total offense level of 9.75 months (Level 11, Zone B) before any variance *per* §3553(a).

5. The Probation Officer's recommendation, which does not take cooperation into consideration (PSR, Sentencing Recommendation, p. 2), calls for a sentence of 15 months, *i.e.* the low end of the applicable Guideline. Although that recommendation does not in fact involve a variance, the PSR makes reference to 15 months as constituting a "variance" (Sentencing Recommendation, p. 1, under heading "Recommended Sentence"; more importantly, the PSR's final paragraph states:

> "In sentencing the defendant, the Court may wish to consider that the defendant is a 69-year-old man with no scoreable criminal history. These issues are relevant to 18 U.S.C. §3553(a)(1) – 'the history and characteristics of the defendant.'" (PSR, ¶ 67).

These two references in the PSR suggest that the Probation Officer recognizes the appropriateness of a downward variance even though he hasn't actually recommended one.

The Plea Agreement does not preclude defendant from seeking a downward variance and, as is discussed *post*, defendant seeks a downward variance based on factors regarding "the history and characteristics of the defendant" (§3553(a)(1)) and "to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6)). Defendant urges the Court to apply a departure *per* 5K1.1 and a variance *per* §3553(a) and to configure a sentence of probation with home detention.

6. In the event that a custodial sentence is imposed, defendant requests that he be permitted to self-surrender to the designated facility. In this regard the Probation Officer has stated:

> "It appears the defendant is a person whose release is not restricted under 18 U.S.C. §3143. The defendant has kept all court appearances, complied with conditions of pretrial release, and is not viewed as a flight risk or a danger to the community. Therefore, the defendant is considered to be a good candidate for voluntary surrender." (PSR, Sentencing Recommendation, p. 2).

**<u>Cooperation Valuation</u>**

Robert Kramer did not concoct or initiate the foreclosure sales bid-rigging he engaged in along with the scores of defendants charged in the bid-rigging cases assigned to this Court and other Judges in this District. When confronted with the ultimatum presented by an extant cabal of bid-riggers – "It was made clear to me from then on to compete at the 'Foreclosure Auctions' and to stay in business, I had to go along with the 'Round Robin' process" – he chose to play ball with them (PSR, ¶ 12). That choice affords neither a defense nor excuse but, rather, an explanation.

His choice was a poor and consequential one but later, in 2011, more than 6 years ago and long before he was charged, he made a good and also consequential decision to enter a cooperation agreement with the government. His office had been searched by FBI agents on January 11, 2011, and two weeks later, on January 25th, in a letter to the prosecutors his attorney stated Mr. Kramer's willingness to cooperate. Several proffer sessions ensued which generated 54 pages of 302s the government has provided to Probation Officer Casai, as well as production of documents by Mr. Kramer, and he agreed to the government's request that he engage in consensual electronic monitoring of other targets (although the government never followed up on that investigative method). He was the first of all of those defendants to cooperate, entering his original guilty pleas on August 3, 2011, the same date as his initial court appearance (Documents 14, 16, 18). As the first cooperator he led what

became a parade of cooperators leading to an almost unheard-of outcome where all but a few of the bid-rigging defendants cooperated. When first cooperator Bob Kramer fell on his sword almost all of the other bid-riggers dropped like dominoes.

Substantial assistance departures post-***Booker***, as with all departures, have changed to the extent that the Court now may consider such departures in fashioning an overall "reasonable" sentence. In ***United States v. Mohamed***, 459 F.3d 979, 986 (9th Cir. 2006), the court stated: "We think that the better view is to treat the scheme of downward and upward 'departures' as essentially replaced by the requirement that judges impose a 'reasonable' sentence"; *see*, also, ***United States v. Ressam***, 679 F.3d 1069, 1091, fn. 10 (9th Cir. 2012) (*en banc*) (consideration of a defendant's cooperation can be either in response to a motion pursuant to 5K1.1 or in consideration of an overall reasonable sentence when considering 3553(a) factors).

**3553(a) Factors**

At almost 70 years of age, Robert Kramer is not a well man, physically or mentally. He is afflicted by a plague of handicaps and physical ailments, including prostate cancer, for which ailments he takes a veritable pharmacopoeia of prescribed medications. He is clinically blind in his right eye, at risk of blindness in the other, dyslexic, and throughout his life has suffered from Major Depressive Disorder, for the symptoms of which he medicates with the psychotropic drugs Ativan (lorazepam) and Prozac (fluoxetine) (PSR, ¶s 41-42). Of particular concern is the very real risk of retinal detachment in his left eye, which if not immediately treated surgically would leave him completely blind, as is discussed in the attached letter of J. Michael Lahey, M.D., who examines Mr. Kramer every 3 months to monitor the condition of the retina in his left eye (Attachment A).

Although beset with these afflictions, Mr. Kramer has managed to lead a lawful and productive life, be a good husband and father, a classically doting grandfather, and a good citizen until this bid-rigging episode. The letters of support submitted to the Court through the Probation Officer attest to these facts and to his kindness, generosity, and charity. They speak volumes about his true character, for instance:

• To assist his employee who was a single mother facing a financial hardship, he made a no-

interest loan to her (Letter of Erika Chavez);

• "Bob charged us under market [rent] rates and only slightly raised the rent once in the seven years living there. ***. Bob has served a large number of families well by rehabilitating foreclosed properties and making them livable and available reasonably for rent or purchase. We're a testament to that." (Letter of Susan and Craig Matthews);

• "He is incredibly generous, never thinking twice about having us stay in his home, borrow his car, treat us to dinner, or taking our sons on wonderful trips to the woods and beach." (Letter of Benjamin Stein);

• "Robert Kramer has been a patron of a number of my charities." (Letter of Sheila Ash);

• "I have known Bob for over 30 years. Over these 30 plus years, he has been a great friend not only to myself, but to my family, and brother Steve, who passed away a number of years ago. In this regards, while my brother was very sick with cancer, Bob was at his side continuously until his passing. At his memorial service, Bob gave one of the most respectful accounting of his relationship with my brother I had heard. This is Bob's true nature." (Letter of Kenneth Winfield).

Since January 11, 2011, when Mr. Kramer's office was searched by the FBI, he has borne the onus of this much-publicized bid-rigging investigation and protracted prosecution through over six-and-a-half years of litigation by others, not a single day of which delay can be attributed to him inasmuch as he pleaded guilty the first day he appeared in court.

Mr. Kramer for the past fifteen years has employed four women full-time in his business, whose employment likely will have to be terminated if he is sentenced to imprisonment (PSR, ¶ 12). Such hardship to innocent employees has been recognized as an appropriate basis for a downward departure or variance; *see*, ***United States v. Milikowsky***, 65 F.3d 4 (2d Cir. 1995); ***United States v. Olbres***, 99 F.3d 28 (lst Cir. 1996).

These aforementioned factors regarding "the history and characteristics of the defendant" appropriately justify a downward variance to a sentence of probation with home detention.

## Achieving Sentencing Parity

Worded positively, as opposed to the phraseology of 18 U.S.C. §3553(a)(6) − "the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" − achieving sentencing parity is a codified factor to be considered in imposing a sentence.  To do so in the scores of related bid-rigging cases assigned to this Court, most but not all of which involve defendants who pleaded guilty and cooperated, presents a daunting task even in this era of Excel spreadsheets.

The Court does not need us to recapitulate the sentences it has imposed thus far in related bid-rigging cases, nor to speculate about the Court's prioritization of such factors in these cases as timing of cooperation and entry of guilty pleas, presence or absence of criminal history, volume of commerce, age of defendant, medical or other personal issues of defendant, etc.  Suffice it to say that imposing a sentence of probation with home detention in the case of Robert Kramer will serve, and not disserve, achieving sentencing parity.

Respectfully submitted,

/s/ *Hugh Anthony Levine*

HUGH ANTHONY LEVINE

Attorney for Defendant